Thomas J. SLATER, Appellee,

v.

KFC CORPORATION, Appellant.

Thomas J. SLATER, Appellant,

v.

KFC CORPORATION, Appellee.

Nos. 79–1360, 79–1398.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 3, 1979.

Decided June 3, 1980.

Rehearing and Rehearing En Banc
Denied June 26, 1980.

Robert R. Schwarz, Clayton, Mo. (argued), and Daniel P. Card II, Clayton, Mo., on brief, for KFC Corp.

Theodore F. Schwartz, Clayton, Mo. (argued), and Barry S. Ginsburg, Clayton, Mo., on brief, for Slater.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

BRIGHT, Circuit Judge.

Thomas J. Slater brought this action alleging that the KFC Corporation (KFC) fraudulently induced him to purchase two franchises for the operation of seafood restaurants. KFC denied this allegation and counterclaimed for the cost of certain equipment which it had supplied to Slater and for royalty and advertising fees allegedly owing under the franchise agreements. The jury awarded Slater $265,000 in actual and $100,000 in punitive damages on his fraud claims. The jury awarded KFC $141,000 on its equipment counterclaim [1] but denied recovery on the counterclaim for royalty and advertising fees. The district court entered judgment for Slater and for KFC in these amounts. Both parties have appealed.

On appeal, KFC alleges numerous trial court errors and contends that it was entitled to a judgment n.o.v. of dismissal on Slater's claim and an award of damages for royalty and advertising fees. Slater appeals from the form of judgment entered on the jury's awards, asserting that, to "reflect the true spirit of the jury verdict," the counterclaim award should be set off against the fraud recovery so that the judgment reflects solely the balance in favor of Slater. For the reasons'set forth below, we reverse the trial court's judgment on Slater's claim for fraud and on KFC's counterclaim for royalty and advertising fees, and remand for a new trial.

I.  *Background.*

Appellant KFC franchises and operates fast-food restaurants throughout the country, including Kentucky Fried Chicken outlets, H. Salt Fish & Chips Shoppes, H. Salt Seafood Galley restaurants and Zantigo Mexican-American restaurants. Appellee Slater has operated two Kentucky Fried Chicken franchises in St. Louis County, Missouri, for over eleven years.

KFC began experimenting with the market concept of the H. Salt Seafood Galley (galley) in 1973, when it opened a test store in Pittsburgh, Pennsylvania. By the summer of 1975, KFC was operating eight test galleys and had decided to expand the number of company-owned galley outlets and to sell franchises for this type of restaurant.

Slater first learned of the "galley concept" while at a KFC convention in March of 1975. In August 1975, Slater received a letter addressed to all prospective franchisees from KFC concerning the galley concept. The letter stated in part:

> Actual market experience has shown that the H. Salt Seafood Galley is an efficient, high volume profit producer.

In the fall of 1975, Slater and a former KFC employee, David Bennett, formed an investment company to operate one or more H. Salt Seafood Galley franchises. In October 1975, Bennett and Slater obtained fran-

---
1. Neither party has appealed this award.

chise option agreements for two stores: one in Bridgeton and the other in St. Ann, Missouri. Construction at the Bridgeton site began that fall and the restaurant opened on March 21, 1976. The St. Ann franchise opened for business four months later, on July 21, 1976. Slater purchased Bennett's interest in their investment company in November of 1976.

By the summer of 1976, Slater already had expressed doubt to KFC about the potential for these franchises. As Slater feared, the restaurants proved to be unsuccessful. Slater ultimately closed the two galley-restaurants in May 1978.

In March of 1978, Slater brought this suit alleging that KFC fraudulently induced him and his predecessor in interest, Bennett, to enter into the franchise agreements. The fraud, according to Slater, was that KFC intentionally concealed its knowledge that from July 1975 through May 1976 the eight test seafood restaurants experienced a marked decline in profits and, thus, could no longer be characterized as high volume profit producers. Hence, Slater asserted that he (and his partner, Bennett) relied upon false information from KFC in entering into the franchise agreements.

Following a nine-day trial, the jury returned verdicts for Slater on his fraud claim and on KFC's counterclaim for royalty and advertising fees. The jury found in favor of KFC on its counterclaim for money owing on certain equipment supplied to Slater.

In considering these appeals we divide our discussion into three areas: (1) the claim that KFC defrauded Slater; (2) KFC's counterclaim for royalty and advertising fees; and (3) the form of the judgment entered by the district court.

## II. *The Fraud Claim.*

KFC challenges the trial court's judgment on the fraud claim by arguing that it was entitled to a judgment n.o.v., and that the jury instructions on damages were erroneous. We discuss these arguments in turn

and conclude by addressing whether KFC is entitled to a new trial on the merits of Slater's claim.

### A. *Whether KFC Was Entitled to Judgment N.O.V.*

#### (1) *The contractual disclaimers.*

The franchise agreements set out the following disclaimer in large type:

NO STATEMENT, REPRESENTATION OR OTHER ACT, EVENT OR COMMUNICATION, EXCEPT AS SET FORTH HEREIN, IS BINDING ON THE FRANCHISOR IN CONNECTION WITH THE SUBJECT MATTER OF THIS AGREEMENT.

KFC maintains that when Slater sued on these agreements, he became bound by the disclaimer clause. Under this theory, the disclaimer provision effectively insulated KFC from making any actionable misrepresentation. Hence, KFC asserts that the trial court erred in refusing to set aside the fraud judgment.

■ KFC correctly observes that Missouri law [2] affords an alleged fraud victim an option: he may retain whatever he has received and sue on the contract, or he may return what he has received and sue for rescission and restitution. *E. g., Harper v. Barket*, 557 S.W.2d 455, 457 (Mo.App.1977). KFC incorrectly asserts, however, that by electing to sue on these agreements Slater affirmed all the contractual terms, including the disclaimer.

A party simply may not, by disclaimer or otherwise, contractually exclude liability for fraud in inducing that contract. *Beshears v. S-H-S Motor Sales Corp.*, 433 S.W.2d 66, 71 (Mo.App.1968) sets forth the Missouri rule as follows:

"The rule that all prior and contemporaneous oral agreements and representations are merged in the written contract entered into by the parties does not apply to fraudulent representations made for the purpose of inducing a party to enter into such contract." [*Id.* at 71, *quoting*

---

**2.** Missouri law governs this diversity action.

from *Horwitz v. Schaper*, 119 S.W.2d 474, 480 (Mo.App.1938).]

■ Unlike *Beshears*, the fraud in this case arose from KFC's concealment of the decline in volume and profits of the test stores, not from the original representation. Regardless of its source, however, the fraud allegedly induced Slater to enter the franchise agreements. Under the Missouri rule, KFC's contractual disclaimers will not bar a suit based upon fraud which induced the defrauded party to enter into the contract.

■ *Sufficiency of evidence of fraud.*

■ KFC also argues that it was entitled to a judgment n.o.v. because the evidence was insufficient to prove each of the essential elements necessary to establish a case of fraud. KFC focuses solely on the classic elements of affirmative misrepresentation. These elements are (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon, and (9) the hearer's consequent and proximate damage. *Beshears v. S-H-S Motor Sales Corp., supra*, 433 S.W.2d at 70; *Yerington v. Riss*, 374 S.W.2d 52 (Mo.1964). *See McMahon v. Meredith Corp.*, 595 F.2d 433, 438 (8th Cir. 1979).

■ The potential for fraud, however, extends beyond affirmative misrepresentation. Missouri recognizes that fraud may also arise by concealment where one contracting party breaches a duty to disclose certain information to the other. We commented on that aspect of Missouri law in *McMahon v. Meredith Corp., supra*, 595 F.2d at 438–39:

> A failure to disclose a material fact can be considered to be an implicit representation of the nonexistence of such fact on which a party may rely, but only if the alleged fraud-feasor has a duty to speak. *See Daffin v. Daffin*, 567 S.W.2d 672, 677 (Mo.App.1978); *National Alfalfa Dehydrating and Milling Co. v. 4010 Wash-*

*ington, Inc.*, 434 S.W.2d 757, 765 (Mo.App. 1968); *see also Hill v. Securities Investment Co.*, 423 S.W.2d 836, 841–42 (Mo. 1968). Whether there exists a duty to speak in turn is a function of the defrauded ·party's ignorance of the truth, means of acquiring it, and relation to the other party, thus implicating the same considerations which underlie elements six, seven, and eight of the general elements of fraud. Missouri courts have consistently held that a duty to speak may arise under any of three conditions: (1) where there is a fiduciary relationship between the parties or a relationship of confidence; (2) where there is an inequality of condition between the parties; and (3) where one party has superior knowledge not within the fair and reasonable reach of the other party. *See, e. g., Citizens Bank of Windsor v. Landers*, 570 S.W.2d 756, 762 (Mo.App.1978); *Alexander v. Johnson Furnace Co.*, 543 S.W.2d 539, 542 (Mo.App.1976); W. Prosser, Law of Torts § 106, at 695–98 (4th ed. 1971).

■ Both the representation implicit in fraudulent concealment and the express statement contained in an affirmative misrepresentation relate to a present fact or an existing intention. *E. g., id.; Citizens Bank of Windsor v. Landers*, 570 S.W.2d 756, 761 (Mo.App.1978). Here the jury instructions premised liability upon an affirmative statement which, although true when made, became false in light of subsequent developments. The instructions read:

> Your verdict must be for the plaintiff if you believe:

> First, that defendant, its agents, servants and employees represented to plaintiff that the H. Salt Seafood Galley Restaurant concept, after testing and research, was an efficient, high-volume profit producer, and

> Second, subsequent to such representation and prior to the execution of the franchise agreement by plaintiff, the defendant knew that such representation was false and that the H. Salt Seafood Galley Restaurant concept was not an efficient, high-volume profit producer

and that defendant failed to disclose to plaintiff prior to plaintiff executing said franchise agreements for the H. Salt Seafood Galley Restaurants that the H. Salt Seafood Galley Restaurant concept was not an efficient, high-volume profit producer, and

Third, the failure of defendant to disclose that the H. Salt Seafood Galley Restaurant concept was not an efficient, high-volume profit producer was material to the execution of the franchise agreement by plaintiff, and

Fourth, plaintiff relied upon the representation in executing the H. Salt Seafood Galley franchise agreements, and

Fifth, that the plaintiff had the right to rely upon the representation that the H. Salt Seafood Galley Restaurant concept was an efficient high-volume profit producer, and

Sixth, that the defendant intended that plaintiff would act in the manner contemplated, and

Seventh, that the plaintiff was ignorant of the falsity of the representation that defendant had superior knowledge than plaintiff as to the representation, and plaintiff did not have any other means to discover the non-disclosure, and

Eighth, that as a direct consequent and proximate result of the representation by reason of the failure to disclose to plaintiff that the H. Salt Seafood Galley Restaurant concept was not an efficient, high-volume profit producer, that plaintiff was damaged.

KFC does not directly attack the basic confusion in these instructions, but asserts simply that the evidence was insufficient to establish a claim for affirmative misrepresentation. This argument may be well taken, for Slater never proved or even claimed that KFC misrepresented a present fact. However, because the instructions included elements of fraud by concealment, we gauge the sufficiency of evidence by that standard as well.[3]

Our review of the record indicates that Slater produced sufficient evidence to go to the jury on KFC's failure to disclose the downturn in the test stores' performance. Further, the jury could have determined that, as to the undisclosed information, KFC possessed superior knowledge of a material fact not within the fair and reasonable reach of Slater. Accordingly, we hold that KFC was not entitled to a judgment n.o.v.

**B.** *Whether the Damages Instructions Were Erroneous.*

The trial court instructed the jury on the issue of actual damages as follows:

> If you find the issues in favor of the plaintiff, then you must award the plaintiff such sum as you believe will fairly and justly compensate the plaintiff for any damages you believe he sustained as a direct consequent and proximate result of the occurrence mentioned in the evidence.

The trial court also instructed the members of the jury that they had discretion to award punitive or exemplary damages. As already noted, the jury returned awards for Slater in the amounts of $265,000 in actual and $100,000 in punitive damages.

On appeal, KFC claims that the instruction on actual damages misstates Missouri law. KFC maintains that the benefit of the bargain rule applies where a party sues on the contract for fraud in the inducement. Slater counters that the benefit of the bargain rule is not appropriate in this case.

We agree with appellant KFC that the benefit of the bargain rule expresses the proper measure of damages. In a suit where a defrauded purchaser counterclaimed on the contract for fraud in the inducement, the Missouri Supreme Court stated:

> According to the weight of authority generally, the proper measure of damages in

---

3. Our willingness to consider the evidence under either theory reflects the presence of elements from both theories in the jury instruc-

tions. We do not endorse the amalgam. We find no precedent for this combination in Missouri case law.

a case of this kind is that "the defrauded party is entitled to the difference between the actual value of the property and what its value would have been if it had been as represented." Annotation, 124 A.L.R. 37, 38. This is often referred to as the majority or "Benefit of the Bargain" rule. * * * The courts of Missouri have adopted and constantly adhered to the majority rule. [*Smith v. Tracy*, 372 S.W.2d 925, 938 (Mo.1963).]

Slater contends, however, that an exception to the general benefit of the bargain rule applies in this case. Slater relies upon a quotation from *Schroeder v. Zykan*, 255 S.W.2d 105, 110 (Mo.App.1953), which reads:

"The rule that a defrauded purchaser's damages are to be measured by the difference between the real and represented values of the property purchased does not apply where, because of the peculiar circumstances of the case involved, such difference fails to measure accurately the loss sustained, as where the purchaser rescinds and returns the property received, or *where he received nothing of value* ; but in such cases he may properly recover the amount he paid with interest from the date of payment, * * *." [*Id.*, quoting from 37 C.J.S. *Fraud* § 143 (1943) (citations omitted; emphasis added).]

Slater argues that the *Schroeder* exception applies because, according to the verdict, he received nothing of value from KFC. The record, however, does not support Slater's argument. The trial court did not submit that issue to the jury. Further, the jury's decision to deny royalty and advertising fees under count one of the counterclaim does not necessarily imply a finding that Slater received nothing of value in the franchise. Hence, we reject Slater's contention that the *Schroeder* exception to the benefit of the bargain rule applies here. Because we conclude that the trial court erred in instructing on damages, we must remand for a new trial on the issue of damages, both actual and punitive.

C.  *Whether KFC Should Receive a New Trial on the Merits As Well.*

In view of our holding that the damage instruction was improper, we must decide whether to limit new trial to issues of damages or to reopen the merits as well. *See Gasoline Products Co., Inc. v. Champlin Refining Co.*, 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931); *Richardson v. Communications Workers of America*, 530 F.2d 126, 130 (8th Cir.), *cert. denied*, 429 U.S. 824, 97 S.Ct. 77, 50 L.Ed.2d 86 (1976); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2814 (1973). The proper measure of actual damages reflects the difference between the actual value of the franchises and their value according to the representation implicit in KFC's nondisclosure. As discussed above, the verdict directing instruction improperly confused KFC's allegedly fraudulent concealment with an affirmative misrepresentation. In addition, any award of punitive damages must turn on an assessment of KFC's conduct. Thus, we conclude that the issues of damages and liability in this case are so interwoven as to require a new trial on both. *See Gasoline Products, supra*, 283 U.S. at 500, 51 S.Ct. at 515; *Richardson v. Communications Workers, supra*, 530 F.2d at 130.

III.  *KFC's Counterclaim For Royalty and Advertising Fees.*

KFC denied the fraud and counterclaimed for breach of contract on two grounds. The first count alleged that since January 1977, Slater had failed to pay monthly advertising and royalty fees as required by the franchise agreements. During trial and posttrial proceedings, although Slater admitted nonpayment, the court denied KFC's motion for a directed verdict or a new trial on this counterclaim.

The trial court instructed the jury to award damages to KFC for advertising and royalty fees unless it found either that (1) KFC had defrauded Slater or (2) KFC had failed to furnish Slater with an accounting of these fees and that this failure materially breached the agreement. Based on this

instruction, the jury denied recovery to KFC.

■ The instruction on fraud as a defense to the counterclaim, like the fraud instruction on Slater's claim, spoke in terms of both affirmative misrepresentation and fraudulent concealment. Although KFC did not preserve any error by objecting to the text of the fraud instruction, its contentions relating to an erroneous damage instruction would seem to implicate this instruction as well.[4] *Cf. Otten v. Stonewall Insurance Co.*, 511 F.2d 143, 146 (8th Cir. 1975) (despite the absence of a specific objection to the instruction, the trial court was given sufficient notice of appellant's position by its objection to another instruction). Because the instruction on fraud was defective, the jury verdict may have rested on an unsound basis. Accordingly, we reverse and remand for a new trial on this counterclaim. *See Mueller v. Hubbard Milling Co.*, 573 F.2d 1029, 1038-39 (8th Cir.), *cert. denied*, 439 U.S. 865, 99 S.Ct. 189, 58 L.Ed.2d 174 (1978).

## IV. *The Form of the Judgment.*

The second count in KFC's counterclaim sought to recover amounts owing on certain equipment furnished to Slater. The jury returned a verdict in KFC's favor and the trial court entered judgment for KFC in the amount of $141,000. As we have noted, no appeal has been taken from that award. Slater, however, moved to amend this portion of the judgment, requesting that the trial court set off KFC's recovery against Slater's award. The trial court denied Slater's motion.

■ A motion to alter or amend a judgment is addressed to the sound discretion of the trial court. *Walker v. Bank of America National Trust and Savings Ass'n*,

268 F.2d 16, 25 (9th Cir.), *cert. denied*, 361 U.S. 903, 80 S.Ct. 211, 4 L.Ed.2d 158 (1959); *Porter v. United Steel & Wire Co.*, 436 F.Supp. 1376, 1379 (N.D.Ia.1977); 6A *Moore's Federal Practice* ¶ 59.15[4], at 59–294 (2d ed. 1979). Slater indicates that in *Gass v. Gamble-Skogmo, Inc.*, 357 F.2d 215 (7th Cir.), *cert. denied*, 384 U.S. 943, 86 S.Ct. 1464, 16 L.Ed.2d 541 (1966), the Seventh Circuit affirmed an opinion in which the trial court set off the defendant's counterclaim award against the plaintiff's fraud recovery. That case, however, is inapposite because the parties did not question the form of the judgment. We cannot say that, in this case, the trial court erred in ordering that the judgment reflect the jury awards upon the separate claims made by the parties. Accordingly, we hold that Slater's appeal lacks merit.

## V. *Conclusion.*

For the foregoing reasons, we reverse and remand for a new trial on Slater's fraud claim and the counterclaim for royalty and advertising fees. That part of the judgment awarding damages to KFC on its claim for equipment costs stands unaffected by this appeal.

Each party shall bear its own costs on appeal.

---

4. KFC also maintains that the instruction was erroneous because Slater could not both sue on the contract for fraud and use that fraud to avoid part of his obligations under the contract. *See Restatement (Second) of Contracts* § 397 (Tent. Draft No. 14, 1979). We do not reach this issue. We note, however, that damages for fraud might include a portion of amounts paid for advertising and royalty fees based upon KFC's overestimation of the franchises' value. That issue should be submitted to the jury on an instruction which correctly enunciates the rules of damages for fraud.