NEAL L. KELLER AND PAULINE M. KELLER, HUSBAND AND WIFE, APPELLANTS AND CROSS-APPELLEES, V. GAYLE K. NOBLE, APPELLEE AND CROSS-APPELLANT.

428 N.W.2d 170

Filed August 19, 1988.   No. 86-918.

Steven O. Stumpff, of Stumpff Law Offices, and Charles E. Wright, of Cline, Williams, Wright, Johnson & Oldfather, for appellants.

James G. Egley, of Moyer, Moyer, Egley & Fullner, for appellee.

BOSLAUGH, WHITE, CAPORALE, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

Plaintiffs-appellants, Neal L. and Pauline M. Keller, allege they suffered $191,640 in damages as the result of the breach by defendant-appellee and cross-appellant, Gayle K. Noble, of his written agreement to purchase certain real estate from them. Noble in turn counterclaimed for the refund of his $15,000 downpayment. The district court accepted the jury's verdict, finding against the Kellers on their petition and against Noble on his counterclaim, thereby in effect awarding the Kellers $15,000 in damages. In their appeal to this court, the Kellers assign as error certain of the district court's instructions to the jury. In his cross-appeal, Noble assigns as error the failure of the district court to sustain his motions for directed verdict on the Kellers' petition and his counterclaim. We affirm in part and in part reverse.

The Kellers' operative petition alleges that at Noble's behest they purchased the land in question for subsequent transfer to him. The petition further claims that at the time of executing the written document which is the subject of the action, the parties agreed that Noble would accept assignments of certain preexisting long-term installment contracts for sale of the land to others, and that Noble partially performed the written document by paying $15,000 and entering upon the land.

Noble's operative answer and counterclaim admits execution of the written document but alleges the Kellers contracted to convey marketable title and found themselves unable to do so, and that while the parties orally agreed that in the event of Noble's default he would forfeit his $15,000 downpayment and the Kellers' damages would be limited to that amount, the oral agreement was nonetheless void as violative of the statute of frauds. Accordingly, Noble prayed for dismissal of the Kellers'

action and return of the $15,000 he had paid.

The Kellers' answer to Noble's counterclaim asserts they were not required to deliver merchantable title, Noble knowing "at the time he signed" the written document "or very shortly thereafter" that the signatories to one of the long-term installment contracts for sale of the land "would not accept an early pay-off," and that Noble did not complain of any title defect but claimed he was abandoning the transaction because he could not obtain the requisite financing.

The land in question, consisting of approximately 2,952 acres in Brown County, was sold in 1971 by Henry and Goldie Boller to Ralph and Joanne Gracey on a long-term installment sales contract on which there remained unpaid at the time of trial approximately $100,000. In addition, the Bollers owed approximately $13,000 on a mortgage to the federal land bank which bore interest at the rate of $4^{1}/_{2}$ percent per annum. On May 15, 1984, the Graceys, without the written consent of the Bollers, assigned their rights under the Gracey-Boller contract to the Kellers. Neal Keller testified that Noble approached him, asking that the Kellers buy the land, as Noble was not then in a position to acquire the necessary financing, and that he would purchase it from them in approximately 6 months. Noble, on the other hand, denies such a conversation.

On June 22, 1984, the parties to this action executed a document prepared by one of Noble's attorneys, in which the Kellers agreed to sell the subject real estate to Noble for a total of $472,320 (or $160 per acre); $15,000 to be paid by Noble to the Kellers on or before June 10, 1984, and the $457,320 balance to be paid on January 15, 1985. The document provides that possession of the real estate be given to Noble upon his "making full payment," and requires that the Kellers

furnish a merchantable abstract of title covering all of said above described real estate as soon as possible and deliver same to [Noble] so that he may have the abstract examined and approved by his attorney; upon notice of defects the [Kellers] shall have a reasonable time to perfect any defects in the title.

As part of executing the document, the parties deleted language which would have required the Kellers to convey the real estate

"by warranty deed, free and clear of all encumbrances, subject only to reservations, restrictions and easements of record." The parties also canceled language which would have made the transaction contingent upon Noble's ability to obtain financing and which had provided that if he were "unable to obtain such financing, the [Kellers agree] to cancel said contract and return the $15,000. down payment to [Noble]."

The court received conflicting evidence as to the reason the language concerning the type of conveyance was deleted. Neal Keller testified it was because if the Bollers were to refuse an early payoff of the amount due them, there would be an encumbrance; another witness testified it was because Noble was to assume the Boller-Gracey contract; and Noble testified he was told the Bollers would be "easy to get along with" and there would be "no problem" with paying off the Boller-Gracey contract. Consistent with other evidence, Noble admitted the language making the transaction contingent on his being able to obtain financing was stricken so that he would forfeit the $15,000 downpayment in the event the transaction were not completed.

Noble made the downpayment, and although the Kellers remained in possession of the real estate, he, in the fall of 1984, directed the killing of gophers on a 35-acre plot on which he then directed the planting and irrigation of alfalfa.

Although Noble discussed possible financing with a banker, he made no applications for a loan and therefore had no loan application rejected. Nonetheless, in November 1984 Noble advised Neal Keller that he "couldn't get financing on the property" and "wanted to turn it back." Later, Neal Keller asked Noble where he wanted the abstracts of title sent for review, whereupon Noble again said he was not going through with the transaction. Noble did not obtain a title opinion and at no time prior to trial made any objection that the land was subject to encumbrances. On January 9, 1985, Noble received a demand through one of the Kellers' attorneys that he accept an assignment of the Kellers' interest in the real estate and pay the balance due by January 15, 1985. Noble countered with a demand that the Kellers return the $15,000 he had paid. This action then ensued.

There is testimony that as of January 15, 1985, the real estate in question was worth up to $98 per acre, a total of $289,296. There is also evidence that when Noble met with the Bollers in late June of 1984, they, because of tax reasons, did not want an early payoff of the sums due them under the Boller-Gracey contract and did not wish to discharge their indebtedness to the federal land bank because of the favorable interest rate that debt bore. The Kellers were later able to persuade the Bollers to accept an early payoff of the amount due them under the Boller-Gracey contract for an additional consideration of $20,000 and payment of an undetermined tax liability the Bollers would incur. This additional consideration was not, however, paid to the Bollers, although Mrs. Boller testified she and her husband remained willing to accept it.

With refreshing candor, the Kellers concede the record brought to this court for review is both confusing and deficient. It is confusing because the numbers assigned to some of the instructions with which the jury was charged differ from the numbers assigned to the instructions as considered at the instruction conference, and no steps were taken on the record to correlate one set to the other. The record is deficient from the Kellers' point of view in that they failed to object to certain instructions about which they now wish to complain.

Nonetheless, there is a single instruction given to the jury which was identifiably objected to in part by the Kellers at the instruction conference, was assigned by them as error, and is discussed in their briefs, namely, the instruction numbered 8 as given to the jury. That instruction advises that in order for Noble to recover on his cross-appeal, on the theory that no contract existed between the parties, it was his burden to show, among other things, "that there was no meeting of the minds of the parties." Another instruction described the test to be used in determining whether such "meeting of the minds" occurred.

The Kellers argue, in essence, that the existence of the written document establishes as a matter of law that the minds of the parties met as expressed therein, and it was therefore error to place before the jury any issue as to whether there was any contract to enforce. Aside from the facts that such was not the nature of the objection they made at the instruction conference

and that the burden of proving a lack of mutual consent was placed on Noble, it was the Kellers themselves who pled and undertook to prove that the written document did not express the entire agreement of the parties—that Noble had agreed to accept merchantable title subject to the encumbrances arising by virtue of the preexisting installment sales contract and the Bollers' mortgage in favor of the federal land bank, notwithstanding the document's language requiring the production of "merchantable abstract of title." Under the circumstances, it cannot be said the court committed error in charging the jury as it did in instruction No. 8.

The Kellers also wish to take advantage of Noble's objection to the instruction which defines a waiver as the voluntary and intentional relinquishment of a known right and which, in effect, requires that to find Noble waived his right to a merchantable title, the jury must first find that he acted with full knowledge and with the intention to relinquish his right to such a title. Yet, as noted previously, what title was required is an issue the Kellers themselves interjected; the instruction was thus not inappropriate.

In complaining about a variety of other instructions concerning their petition, the Kellers recognize and acknowledge that, ordinarily, the failure to object to instructions after they have been submitted for review will preclude raising an objection thereafter. *McCready v. Al Eighmy Dodge*, 197 Neb. 684, 250 N.W.2d 640 (1977). They properly point out, however, that the trial judge is nonetheless under a duty to correctly instruct on the law, *Anderson v. Union Pacific RR. Co., ante* p. 321, 426 N.W.2d 518 (1988), and that this court may take cognizance of plain error and thus set aside a verdict because of a plainly erroneous instruction to which no previous objection was made. *Omaha Mining Co. v. First Nat. Bank*, 226 Neb. 743, 415 N.W.2d 111 (1987). Plain error is error which was unasserted or uncomplained of at trial but is plainly evident from the record, which prejudicially affects a litigant's substantial right, and which is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *In re Estate of Fischer*, 227 Neb.

722, 419 N.W.2d 860 (1988). However, our review leads us to conclude that in view of the theories on which the case was tried and the evidence, the instructions given present no plain error.

The determination that the verdict in favor of Noble on the Kellers' petition must stand mandates a conclusion that the verdict in favor of the Kellers on Noble's counterclaim must be reversed. The record is such that in order to find as it did on the Kellers' petition, the jury must have determined either that there was no contract for the sale of the land in question, in which event there is no basis on which they may retain the downpayment, or that a contract existed but the Kellers could not deliver the requisite title, in which case again there is no basis on which they may retain the $15,000. Thus, the Kellers' complaints with respect to the other instructions concerning Noble's counterclaim are equally without merit.

The corollary to the oft-stated rule that a jury verdict will not be disturbed on appeal unless it is clearly wrong, *Havlicek v. Desai*, 225 Neb. 222, 403 N.W.2d 386 (1987), and *Weiss v. Autumn Hills Inv. Co.*, 223 Neb. 885, 395 N.W.2d 481 (1986), is that a verdict which is clearly wrong will be set aside on appeal.

AFFIRMED IN PART, AND IN PART REVERSED.

HASTINGS, C.J., and SHANAHAN, J., not participating.