BLUE VALLEY COOPERATIVE, A COOPERATIVE CORPORATION,
APPELLEE, V. NATIONAL FARMERS ORGANIZATION,
AN IOWA CORPORATION, APPELLANT.
600 N.W. 2d 786

Filed October 1, 1999.    No. S-97-1006.

752

Robert L. Nefsky and Timothy L. Moll, of Rembolt Ludtke & Berger, for appellant.

David A. Jarecke, of Crosby, Guenzel, Davis, Kessner & Kuester, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## I. NATURE OF CASE

Blue Valley Cooperative (BVC) sued National Farmers Organization (NFO) to recover contractual costs of storing and handling NFO's white corn. NFO counterclaimed that BVC's negligence had damaged NFO's white corn and that BVC had breached an oral contract to reimburse NFO for that damage. After a jury found in favor of BVC on the written contract cause of action and against NFO on NFO's counterclaims, the trial court awarded BVC prejudgment interest. NFO appeals the judgment entered pursuant to the jury's verdict and the court's award of prejudgment interest. For the reasons that follow, we affirm in part, and in part reverse and remand for a new trial on the negligence counterclaim. We also reverse the trial court's award of prejudgment interest.

## II. FACTUAL BACKGROUND

After a windstorm damaged grain bins that stored white corn belonging to certain NFO member-producers in 1993, NFO representatives contacted BVC to arrange for delivery and storage of the white corn at BVC's facility in Seward County. On July 9, 1993, BVC and NFO entered into a written agreement to facilitate such storage. The agreement stated that BVC was to receive and store NFO's white corn. The agreement recited that the white corn would be grade No. 2 with a moisture content of 15 percent. If any of the white corn received by BVC was off-grade or had a higher moisture content, the agreement called upon BVC to reject the load unless instructed otherwise by a representative of NFO.

The agreement also contained a waiver clause stating, "Quality liability will be waived if Blue Valley Cooperative is instructed to receive lesser than grade #2 corn and moisture content higher than 15.0%." Under the agreement, NFO was to arrange for the white corn to be shipped out of BVC's facility by

August 31, 1993. BVC was to load the grain onto railcars when the time came for the white corn to be shipped. The agreement placed the responsibility for railcar delay (demurrage) charges on NFO. Shortly after the parties entered into the agreement, NFO member-producers delivered approximately 115,000 bushels of their white corn to BVC.

Despite the agreement to remove the white corn from BVC by August 31, 1993, railcars were not dispatched to do so until January 21, 1994. On that day, a 54-car train arrived to haul the white corn to buyers in Mexico. NFO member-producers delivered more white corn from their farms to be commingled with the white corn stored at BVC and loaded onto the train. After BVC had loaded roughly 27 railcars with the NFO's commingled white corn, the Lincoln Inspection Service reported that the white corn was below grade No. 2 and had excessive damage. As such, BVC personnel unloaded the train and placed all the white corn back into BVC's storage facility.

BVC and NFO offered conflicting reasons at trial for the low grade of the corn. In particular, BVC presented testimony and exhibits suggesting that the white corn delivered by NFO had been infected with blue-eye mold. BVC witnesses testified that the blue-eye mold, as opposed to any negligent handling or storage, had caused the corn to deteriorate while warehoused at BVC and to ultimately rate below grade No. 2. Meanwhile, NFO witnesses asserted that heat had damaged the corn while stored at BVC's facility, which damage resulted from BVC's failure to keep the white corn cool and at a low moisture content.

After BVC unloaded the damaged white corn from the railcars, NFO member-producers delivered nearly 190,000 bushels of grade No. 2 white corn to fill the train on January 26, 1994. The railcars departed with the corn on February 9. BVC acknowledged that part of the reason for the railcar delay was having to load, unload, and reload the white corn. Burlington Northern Railroad billed BVC $15,120 for the demurrage on March 24, with a due date of April 8. BVC paid Burlington Northern Railroad, but remained confused about which of BVC's clients should be held accountable for the demurrage. For some reason, BVC agents thought the demurrage should be charged to Harvest States (a different BVC client) and did not

realize that the demurrage was NFO's responsibility until some-time in March 1995.

On March 1, 1994, representatives from NFO and BVC met to discuss how the remaining white corn would be disposed of and how costs and damages would be apportioned. At trial, the parties disputed what was orally agreed upon at that meeting. After the meeting, NFO paid BVC storage charges of $18,566.69 for storing the original 115,000 bushels of white corn from July 1993 to January 1994. NFO also paid BVC $19,058.59 for handling the 190,000 bushels of white corn delivered by NFO and loaded directly on railcars in January 1994. Finally, NFO paid BVC $2,566.82 for handling 25,668 bushels of the damaged white corn that NFO sold after January 1994. The remaining white corn was removed from BVC's facility by October 1994.

Thereafter, BVC initiated the instant suit claiming that NFO still owed BVC $8,843.03 in storage and handling costs (after discounting 2 cents per point on each bushel with damaged kernels) pursuant to the alleged oral agreement of March 1, 1994, and $15,120 in demurrage charges pursuant to the original written agreement. In response, NFO asserted counterclaims that BVC had negligently damaged NFO's white corn and breached an oral contract to reimburse NFO for that damage. NFO alleged damages in the amount of $77,398 by calculating the difference between the $3.05 per bushel the corn would have brought if it were grade No. 2 in January 1994 and the $2.60 per bushel for which it was actually sold.

On the morning of trial, NFO filed a motion in limine to exclude the waiver clause. NFO argued that the waiver clause was void and unenforceable under Neb. U.C.C. § 7-204 (Reissue 1992) and, therefore, irrelevant. The trial court overruled NFO's motion. After the jurors were sworn but before any evidence was admitted, NFO objected to admission of the waiver clause. Again, the trial court overruled NFO's objection.

When BVC attempted to adduce testimony from BVC representative Robert H. Kohtz regarding the waiver clause, NFO objected and was again overruled. At that point, NFO requested a continuing objection, which the trial court noted. In so doing, the trial court stated that NFO's continuing objection "continues

to be overruled." The entire written contract containing the waiver clause and a facsimile copy of it were both admitted into evidence.

Kohtz briefly described the waiver clause in the contract and said it was included because BVC had reason to believe that the white corn delivered by NFO had been exposed to rain. Kohtz explained that storing corn with a moisture content in excess of 15 percent can lead to problems and that BVC wanted to protect against that with the waiver clause. BVC also adduced testimony regarding the waiver clause while cross-examining Edwin Tvrdy, a representative of NFO.

In discussing the jury instructions with counsel for both parties, the trial court indicated that instruction No. 10 "took care of the limitation on liability" by paraphrasing § 7-204. Instruction No. 10 defined negligence and res ipsa loquitur, outlined the elements of those theories and the standard of proof, and explained that BVC could be held liable for failing to exercise care that a reasonably prudent person would under similar circumstances. Neither BVC nor NFO objected, so instruction No. 10 was submitted to the jury.

The jury returned a verdict in favor of BVC on the written contract cause of action for demurrage charges (in the sum of $15,120) and against NFO on NFO's counterclaim for negligence. The jury found against each party's breach-of-an-oral-contract claim. The trial court entered judgment on the jury's verdict and, without explaining its rationale, awarded BVC prejudgment interest from May 8, 1994. NFO timely appealed.

## III. ASSIGNMENTS OF ERROR

NFO assigns two errors. First, NFO claims that the contractual waiver of "quality liability" (waiver clause) is void and unenforceable under § 7-204; thus, it was reversible error to allow the jury to learn of it. Second, NFO argues that its dispute with BVC was unliquidated and that therefore, prejudgment interest should not have been charged against NFO.

## IV. STANDARD OF REVIEW

[1] In order to resolve NFO's first assignment of error, this court must interpret § 7-204 to determine whether BVC's waiver

clause was void or unenforceable. Questions of statutory interpretation require an appellate court to reach a conclusion independent of the decision made by the court below. *Schmidt v. State*, 255 Neb. 551, 586 N.W.2d 148 (1998).

■ We must also determine whether it was reversible error to admit the waiver clause into evidence. To constitute reversible error in a civil case, the wrongful admission of evidence must unfairly prejudice a substantial right of a litigant complaining about evidence admitted. *Radecki v. Mutual of Omaha Ins. Co.*, 255 Neb. 224, 583 N.W.2d 320 (1998).

■ Regarding the prejudgment interest awarded to BVC and whether BVC's damages were liquidated, our scope of review is de novo. See, e.g., *Quantum Elec., Inc. v. Concept Dev., Inc.*, 237 Neb. 927, 468 N.W.2d 372 (1991) (mentioning that de novo review was conducted without explicitly setting forth scope of review for awards of prejudgment interest); *Northwestern Bell Tel. Co. v. Woodmen of the World Life Ins. Soc.*, 189 Neb. 30, 199 N.W.2d 729 (1972) (failing to set forth any standard of review for prejudgment interest awards but considering extensive evidence in record to decide whether such award was proper).

## V. ANALYSIS

### 1. WAIVER CLAUSE IS UNENFORCEABLE

Although the question has not yet been addressed in Nebraska, we are persuaded that blanket waivers of liability in warehouse contracts—such as that in the written agreement between BVC and NFO—are unenforceable under § 7-204. There is no doubt that the contract containing the waiver clause at issue here is a warehouse contract. Compare Neb. Rev. Stat. § 88-526(6) (Reissue 1987) (defining "warehouseman") with Neb. U.C.C. § 7-102(1)(h) (Reissue 1992) (defining "warehouseman") and § 7-102(f) (defining "goods"). Hence, § 7-204 controls whether the waiver clause is enforceable.

In pertinent part, § 7-204 states:

(1) A warehouseman is liable for damages for loss of or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful man would exercise under like circumstances but unless otherwise

agreed he is not liable for damages which could not have been avoided by the exercise of such care.

(2) *Damages may be limited by a term in the warehouse receipt or storage agreement limiting the amount of liability in case of loss or damage, and setting forth a specific liability per article or item, or value per unit of weight, beyond which the warehouseman shall not be liable.*

(Emphasis supplied.)

Statutory language is to be given its plain and ordinary meaning absent anything to the contrary; thus, an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Popple v. Rose*, 254 Neb. 1, 573 N.W.2d 765 (1998). Although official comments to the Uniform Commercial Code, Neb. U.C.C. §§ 1-101 through 10-104 (Reissue 1992 & Supp. 1993), are not binding, they are persuasive in matters of interpretation. *Omaha Pollution Control Corp. v. Carver-Greenfield*, 413 F. Supp. 1069 (D. Neb. 1976), *disapproved on other grounds, Mann v. Weyerhaeuser Co.*, 703 F.2d 272 (8th Cir. 1983). The stated purpose of § 7-204 in the official comment to that statute is to eliminate controversy surrounding contractual limitations on liability by setting forth conditions under which such could be done.

Moreover, the components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible. *In re Invol. Dissolution of Battle Creek State Bank*, 254 Neb. 120, 575 N.W.2d 356 (1998). In setting out the purpose of the Uniform Commercial Code, § 1-102(3) declares that the provisions of those statutes "may be varied by agreement, except as otherwise provided in the code and except that the obligations of good faith, diligence, reasonableness and care . . . may not be disclaimed by agreement." Additionally, § 7-202(3) allows a warehouse keeper to insert in the receipt any terms that conform with "the provisions of the Uniform Commercial Code and do not impair [the warehouse keeper's] duty of care" as prescribed by § 7-204, and renders ineffective any contrary provisions. Taken together, these statutes reveal the legislative intent behind § 7-204, which was

to provide the sole mechanism by which a warehouse keeper could contractually diminish exposure to liability or limit damages for negligence in an agreement to store a customer's goods.

We are also impressed that the consensus approach of other jurisdictions is to void waivers of liability that do not strictly conform to § 7-204. See, *Butler Mfg. Co. v. Americold Corp.*, 835 F. Supp. 1274 (D. Kan. 1993) (striking down warehouseman's blanket waiver for ordinary negligence); *Fireman's Fund Am. Ins. Co. v. Capt. Fowler's Marina, Inc.*, 343 F. Supp. 347 (D. Mass. 1971) (voiding boat-storage agreement's blanket exculpatory clause); *Allstate Ins. Co. v. Winn. Co. Fair Ass'n*, 131 Ill. App. 3d 225, 475 N.E.2d 230, 86 Ill. Dec. 233 (1985) (reversing lower court's finding that provision waiving all liability was enforceable); *Hearst Corp. v. Bonded Services, Inc.*, 124 Misc. 2d 455, 476 N.Y.S.2d 733 (N.Y. Sup. 1984) (holding waiver of liability void for lack of opportunity to obtain increased valuation).

Nonetheless, other jurisdictions are quite willing to uphold damage-limiting clauses in warehouse contracts when such clauses conform to the terms of statutes very similar or identical to § 7-204. See, *International Nickel Co. v. Trammel Crow Distrib.*, 803 F.2d 150 (5th Cir. 1986) (upholding clause that limited damages to 100 times base storage rate for nickel); *Sanfisket, Inc. v. Atlantic Cold Stor. Corp.*, 347 So. 2d 647 (Fla. Dist. App. 1977) (upholding clause that limited damages to 50 cents per pound of shrimp); *Keefe v. Bekins Van & Storage Co.*, 36 Colo. App. 382, 540 P.2d 1132 (1975) (upholding clause limiting damages to 10 cents per pound per article of household goods); *Dunfee v. Blue Rock Van & Storage, Inc.*, 266 A.2d 187 (Del. Super. 1970) (upholding clause limiting damages to 60 cents per pound per article up to $1,000).

■ Because the above approach is sensible and consistent with Nebraska's legislative intent, we hold that a warehouse contract may reasonably limit a warehouse keeper's damages by setting forth a specific liability per article, item, or unit of weight, but may not disclaim or waive liability entirely under § 7-204. BVC maintains that the written agreement with NFO complied with § 7-204 in this manner insofar as it set forth "a specific liability per article or item." In other words, BVC claims that the

phrase "lesser than grade #2 corn and moisture content higher than 15.0%" represents an article or item. The flaw in this reasoning is that BVC's waiver clause did not *limit damages* for such an article or item; instead, it *eliminated liability*—which is exactly what the plain language of § 7-204 prohibits. Therefore, the waiver clause in BVC's contract was unenforceable.

### 2. Admitting Waiver Clause Was Reversible Error

#### (a) NFO Preserved Error for Appeal

BVC argues that NFO did not properly object to admission of the waiver clause and that thus, the issue was not preserved for appeal. In support of this, BVC claims that NFO did not object when counsel for BVC made references to the waiver clause during opening and closing remarks. BVC also asserts that NFO failed to make clear the evidentiary grounds for the objections that were made.

BVC is correct that a litigant's failure to make a timely objection waives the right to assert prejudicial error on appeal. *Benzel v. Keller Indus.*, 253 Neb. 20, 567 N.W.2d 552 (1997); *Reavis v. Slominski*, 250 Neb. 711, 551 N.W.2d 528 (1996). Moreover, a litigant must specify the grounds for such an objection at trial. See *Washa v. Miller*, 249 Neb. 941, 546 N.W.2d 813 (1996).

Opening and closing statements were not transcribed in the instant case and are not included in the record before us. What is in the record is NFO's argument at the hearing on its motion in limine to exclude the waiver clause as irrelevant. Beyond that, NFO objected to admission of the waiver clause at the very start of trial within 1 hour of arguing the motion in limine. NFO objected to admission of the waiver clause again when BVC first sought to adduce testimony and exhibits pertaining to the waiver clause. After being overruled, NFO asked for a continuing objection on the matter, which the trial court noted.

This series of motions, arguments, and objections made it abundantly clear that relevancy was the basis for the objection. We, therefore, conclude that NFO properly preserved the issue for appeal under these circumstances.

### (b) Error Was Prejudicial

A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. See *Brown v. Farmers Mut. Ins. Co.*, 237 Neb. 855, 468 N.W.2d 105 (1991). If a trial court erroneously admits evidence that unfairly prejudices a substantial right of the complaining litigant, such admission is an abuse of discretion and constitutes reversible error. See, *Radecki v. Mutual of Omaha Ins. Co.*, 255 Neb. 224, 583 N.W.2d 320 (1998); *Westgate Rec. Assn. v. Papio-Missouri River NRD*, 250 Neb. 10, 547 N.W.2d 484 (1996).

Our first step is to determine whether it was error to admit the waiver clause; if so, our next step is to decide if the error was prejudicial and reversible. In Nebraska, all relevant evidence is admissible unless there is some specific constitutional or statutory reason to exclude such evidence. Neb. Rev. Stat. § 27-402 (Reissue 1995). Relevant evidence is that which tends to make the existence of any fact of consequence more or less probable than it would be without the evidence. Neb. Rev. Stat. § 27-401 (Reissue 1995).

The facts of consequence in this case were (1) whether an enforceable written or oral contract existed between the parties, (2) whether the enforceable provisions of such a contract were breached and by whom, (3) whether NFO's corn was damaged while in BVC's custody and to what extent, and (4) whether negligence on the part of BVC was the proximate cause of such damage.

Had the waiver clause been enforceable under § 7-204, then the waiver clause might have been admissible under §§ 27-401 and 27-402. Indeed, such a clause would tend to prove the existence of an enforceable contractual provision. However, because we have determined that the waiver clause was unenforceable, it had no tendency to make any of the above facts of consequence more or less likely and was irrelevant. Just as § 27-402 makes all relevant evidence admissible, so too does it render all irrelevant evidence inadmissible. Hence, the clause was irrelevant under § 27-401 and inadmissible under § 27-402. The trial court abused its discretion in admitting the waiver clause into evidence.

Of course, the question at the crux of this matter is whether the error was prejudicial and reversible. In arguing that it was not prejudicial, BVC points out that NFO neither objected nor offered an alternative to jury instruction No. 10—which allowed the jury to find against BVC on NFO's negligence cause of action. In other words, BVC asserts that (1) instruction No. 10 allowed the jury to find against BVC on a negligence theory, thereby curing or undoing any prejudicial harm caused by the erroneous admission of the waiver clause, or (2) NFO's failure to object to instruction No. 10 or offer another instruction waived the error objected to at the evidentiary stage of trial.

In support of its argument, BVC cites *Keller v. Noble*, 229 Neb. 542, 428 N.W.2d 170 (1988). However, the *Keller* case does not stand for the proposition that a proper jury instruction will cure an otherwise reversible error committed during the evidentiary phase of a trial. On the contrary, *Keller* concerns waiver of an erroneous jury instruction by failing to object to it.

NFO counters that it had no duty to object to instruction No. 10 because the instruction was favorable to NFO. Moreover, NFO urges that it did not waive the error complained of at the evidentiary stage by failing to offer a jury instruction on the unenforceable nature of the waiver clause. NFO claims that offering such an instruction would have been fruitless, given the trial court's prior rulings on the admissibility of the waiver clause.

In the instant cause, the jury was not specifically instructed that the waiver clause was unenforceable or that they should disregard the clause. As such, the jury could easily have been confused or misled as to whether BVC could be held liable—even if BVC was negligent and such negligence caused the harm to NFO's corn.

In the final analysis, the record does not disclose (and it is impossible to say) what effect, if any, the waiver clause had on the jury's verdict—even in light of instruction No. 10. Where it cannot be gleaned from the record that evidence wrongfully admitted did not affect the result of the trial unfavorably to the party against whom such evidence was admitted, reception of that evidence must be considered prejudicial error. *Westgate*

*Rec. Assn. v. Papio-Missouri River NRD*, 250 Neb. 10, 547 N.W.2d 484 (1996). We so conclude.

In holding that it was prejudicial and reversible error to admit the waiver clause, we do not, however, undo the jury's entire verdict. The jury's verdict in favor of BVC on the breach of the written contract action is unaffected. Partial retrials are permissible if "it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Gasoline Prods. Co. v. Champlin Co.*, 283 U.S. 494, 500, 51 S. Ct. 513, 75 L. Ed. 1188 (1931). If the issues are "so interwoven . . . that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty," then a retrial on all interwoven issues is required. 283 U.S. at 500. See, also, e.g., *Burke v. Deere & Co.*, 6 F.3d 497 (8th Cir. 1993); *England v. Gulf & Western Mfg. Co.*, 728 F.2d 1026 (8th Cir. 1984); *Hallberg v. Brasher*, 679 F.2d 751 (8th Cir. 1982); *Slater v. KFC Corp.*, 621 F.2d 932 (8th Cir. 1980).

We note that NFO did not appeal the jury's finding that NFO was liable for the contractual demurrage charges; instead, NFO assigned as error the jury's finding that BVC was not liable for negligently damaging NFO's corn. Retrial is not necessary on the contract claim because the issue of BVC's alleged negligence is "so distinct and separable" from the contract claim that "a trial of it alone may be had without injustice." See *Gasoline Prods. Co. v. Champlin Co., supra*. NFO's liability on the demurrage charge is governed by the written contract, whereas BVC's alleged negligence in storing the corn is a completely separate issue based upon a separate set of facts. The inadmissibility of the waiver clause regarding liability has no bearing on the contract claim for demurrage charges. Therefore, we reverse only that portion of the judgment that found BVC not liable for negligently damaging NFO's corn and remand for a new trial on that cause of action consistent with this opinion.

### 3. Award of Prejudgment Interest Was Inappropriate

In analyzing whether the trial court's award of prejudgment interest to BVC was proper, it is important to recognize that the award pertains only to the demurrage charge in the written con-

tract. That is so because the jury did not find in favor of BVC's breach-of-an-oral-contract claim.

Awards of prejudgment interest are governed by Neb. Rev. Stat. § 45-103.02 (Reissue 1998). *Elson v. Pool*, 235 Neb. 469, 455 N.W.2d 783 (1990). Section 45-103.02 states in pertinent part:

(1) . . . [I]nterest . . . shall accrue on the unpaid balance of unliquidated claims from the date of the plaintiff's first offer of settlement which is exceeded by the judgment until the rendition of judgment if all of the following conditions are met:

(a) The offer is made in writing upon the defendant by certified mail, return receipt requested, to allow judgment to be taken in accordance with the terms and conditions stated in the offer;

(b) The offer is made not less than ten days prior to the commencement of the trial;

(c) A copy of the offer and proof of delivery to the defendant in the form of a receipt signed by the party or his or her attorney is filed with the clerk of the court in which the action is pending; and

(d) The offer is not accepted prior to trial or within thirty days of the date of the offer, whichever occurs first.

(2) . . . [I]nterest . . . shall accrue on the unpaid balance of liquidated claims from the date the cause of action arose until the rendition of judgment.

We note that BVC did not comply with the written-offer requirements of § 45-103.02(1) for unliquidated claims. Thus, if BVC was entitled to prejudgment interest at all, BVC's claim must have been a liquidated one fitting within the provisions of § 45-103.02(2). Liquidated claims are those where there is no reasonable controversy as to the plaintiff's right to recover or as to the amount of such recovery. *Lange Indus. v. Hallam Grain Co.*, 244 Neb. 465, 507 N.W.2d 465 (1993). By contrast, unliquidated claims are those where the plaintiff's right to recover or the amount of such recovery is subject to a reasonable controversy. *A.G.A. Inc. v. First Nat. Bank*, 239 Neb. 74, 474 N.W.2d 655 (1991).

Assuming, without deciding, that there was no reasonable controversy surrounding BVC's claim, the record reveals no

indication of the precise date that BVC's cause of action arose. Conceivably, it could have been at three points: either (1) when NFO failed to timely dispatch the railcars, (2) when Burlington Northern Railroad billed BVC for the demurrage, or (3) when BVC learned that NFO was responsible for the demurrage charge and demanded compensation from NFO. We determine that the proper date for prejudgment interest to begin accruing on a liquidated claim under these circumstances is the date when BVC demanded such compensation from NFO.

The record shows that Burlington Northern Railroad billed BVC for the demurrage in March 1994, with a due date of April 8, and that BVC did not realize that the charge should be billed to NFO until sometime in March 1995. Beyond that, the record does not reveal the date that BVC requested reimbursement from NFO for the demurrage charge. As such, we can only speculate as to how the trial court determined that BVC was entitled to prejudgment interest from May 8, 1994. Because the record does not disclose when BVC's cause of action arose, the trial court erred in awarding BVC prejudgment interest from May 8. Thus, we reverse the trial court's award of prejudgment interest and remand for further proceedings consistent with this opinion.

## VI. CONCLUSION

To summarize, we hold that blanket waivers of liability—as opposed to reasonable limitations on damages per article, item, or unit of weight—in warehouse contracts are void under § 7-204. Further, we conclude that it was prejudicial error to admit the unenforceable and irrelevant waiver clause into evidence in this cause. Finally, we determine that the trial court erred in awarding BVC prejudgment interest from May 8, 1994, as the record does not disclose the precise date when BVC's cause of action arose. We, therefore, affirm in part, and in part reverse, the judgment of the district court and remand for a new trial on NFO's counterclaim against BVC for negligence and for further proceedings on BVC's award of prejudgment interest consistent with this opinion.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.